IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REBECCA CHUNG, Personal Representative of the Estate of JOSE CHAIR ZERMENO GARCIA, on behalf of his parents, ARMANDO ZERMENO ROSAS, and VERONICA GARCIA-PEREZ,<br><br>          Plaintiff,<br><br>          v.<br><br>NATHAN ANDERSON, deceased, CHRISTOPHER McELLIGOTT, individually and in his official capacity, JOHN DOE, individually and in their respective capacities as officers of the Omaha, Nebraska Police Department, THOMAS WARREN, individually and in his capacity as Police Chief of the Omaha, Nebraska Police Department, OMAHA POLICE DEPARTMENT, and CITY OF OMAHA, Nebraska,<br><br>          Defendants. | CASE NO. 8:06CV406<br><br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 27). The Defendants have submitted briefs (Filing Nos. 29 and 33) and an index of evidence (Filing No. 31) in support of the Motion. The Plaintiff has filed a brief (Filing No. 35) in opposition to the Motion, but no evidence. The Plaintiff's brief is simply a copy of the brief submitted on June 18, 2007, with a few paragraphs deleted. (Filing No. 32). In response to the issues raised in the Plaintiff's brief of June 18, 2007, this Court granted the Plaintiff until July 20, 2007, to complete any depositions for use in the Plaintiff's response to the Motion for Summary Judgment, and granted the Plaintiff until July 30, 2007, to respond to that Motion. It was specifically noted that the Plaintiff's response must

comply with NECivR 56 (b)(1), and that failure to comply with that local rule likely would result in the granting of the Motion for Summary Judgment. (Filing No. 34, p.2).

## FACTS

Because the Plaintiff has made no effort to comply with NECivR 56(b)(1), and has submitted no evidence in opposition to the Defendants' Motion for Summary Judgment, which motion is supported by an index of evidence and a brief in compliance with NECivR 56(a)(1), the Defendants' properly documented statement of facts is "deemed admitted." (NECivR 56(b)(1)). The following is a summary of those facts, as set forth in the Defendants' brief at Filing No. 29, pages 2-5.

In the early morning hours of May 30, 2004, Omaha police officers were called to a house at 3901 "S" Street in Omaha, Nebraska, in response to reports that a man was barricaded at that address with a knife, and was threatening harm to himself and others. The person who called 911 for assistance sounded upset and incoherent. At approximately 6:30 a.m., Omaha police officer Christopher McElligott responded to the call. Officers Nathan Anderson and Tim Lasater responded later. They all wore police uniforms.

Upon arriving at the address, Officer McElligott found a man, later identified as Jose Chair Zermeno Garcia, barricaded in an upstairs bedroom and in possession of a knife. The man was yelling at other officers at the scene and McElligott learned from witnesses that Garcia had been drinking. McElligott subsequently learned from Garcia that he had been consuming drugs.

McElligott spent some time in the yard at the address and was able to talk to Garcia. McElligott spoke some Spanish, but the conversation was conducted in English, because Garcia responded in English and appeared to understand English. McElligott asked Garcia

if McElligott could come into the house and talk, and Garcia agreed. McElligott then entered the house and went to a small, narrow hallway on the second floor, outside the closed door of the room where Garcia was located.

McElligott continued to talk to Garcia through the closed door. Garcia told McElligott that Garcia had a drug problem and that no one could help him. When McElligott asked Garcia if he intended to hurt anyone, Garcia told McElligott that he would hurt McElligott, if necessary. Garcia became more agitated and angry as time passed, acting erratically. His conduct ranged from calm and talkative to yelling and screaming. McElligott believed Garcia was irrational. Police negotiators then arrived at the scene, outside the home, and began talking to Garcia.

At some time during the negotiations, and after Anderson and Lasater had arrived in the hallway, Garcia opened the closed door and stepped into the small hallway, holding a boning knife, with a sharp point and edge. He stood approximately eight to ten feet from McElligott. The officers ordered Garcia to drop the knife, but he did not. Officer Lasater fired at Garcia with a Taser weapon, which has a prong intended to apply an electrical stimulation to cause a temporary loss of muscle control. The Taser probe appeared to have no effect on Garcia, and he turned and climbed out the bedroom window, onto a roof. He talked to police negotiators outside the house and began to cut himself with the knife. The officers outside the house ordered Garcia to stop, and McElligott heard what he believed to be pepper balls or a Taser deployed outside the home. Garcia came back in through the window and the officers in the hallway could see that his shirt was soaked with blood. Garcia was screaming and appeared to be hysterical.

The officers in the hallway yelled commands at Garcia to drop the knife, but he ignored the commands. He moved out of the officers' sight for a moment, then reappeared, peering around a doorjamb. He continued to hold the knife in his hand in a threatening manner. McElligott concluded that Garcia intended to hurt the officers. Garcia was six to eight feet from McElligott. The officers continued to yell for Garcia to drop the knife and McElligott and Anderson stood with their guns drawn and pointed at Garcia while Lasater aimed the Taser weapon at Garcia.

When Garcia began to step toward the officers with the knife upraised, McElligott yelled that he would shoot if Garcia took another step. Garcia then stepped closer to the officers, and both McElligott and Anderson fired gunshots at him, while Lasater filed the Taser. Garcia continued to move forward and McElligott continued to fire shots until Garcia fell in the hallway approximately two to three feet away from the officers, and still holding the knife. As the shots were fired, McElligott and Lasater believed that Garcia posed an immediate threat of causing serious bodily injury or deadly harm to one or more of the officers.

Garcia died on May 30, 2004, as a direct result of the gunshots fired. Officer Nathan Anderson is now deceased from causes not related to this incident.

## STANDARD OF REVIEW

The Court must determine whether the record, viewed in a light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as

a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* (citations omitted). In addition, the existence of an alleged factual dispute is not enough, by itself, to deny summary judgment. Instead, the alleged factual dispute must be outcome determinative. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-9 (8th Cir. 2006).

Finally, the Court's function is not to weigh the credibility and persuasiveness of evidence in the context of a motion for summary judgment. *Thomas v. Corwin*, 483 F.3d

5

516, 526 (8th Cir. 2007).  Nevertheless, if testimony has been irrefutably contradicted by documentary evidence, or the testimony is otherwise inherently incredible, it need not be credited even for purposes of a motion for summary judgment.  *Walker v. Peters*, 863 F. Supp. 671, 672-73 (N.D. Ill. 1994).

## DISCUSSION

The Plaintiff was warned directly by this Court to comply with NECivR 56 (b)(1) in the submission of materials in opposition to the Defendants' Motion for Summary Judgment, and was warned that failure to comply with that rule would likely result in the granting of the motion.  Nonetheless, the Plaintiff has submitted no evidence in opposition to the Defendants' motion and has failed to address the Defendants' factual allegations in compliance with NECivR 56 (b)(1), which allegations are now deemed admitted and accepted as this Court's findings of fact.

Liberally construing the Plaintiff's Complaint, it asserts four causes of action: (1) use of excessive force in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 on the part of Defendants Anderson, McElligott, and other unnamed Omaha Police officers; (2) failure to train in violation of 42 U.S.C. § 1983 on the part of Defendants City of Omaha and Omaha Police Department; (3) unlawful entry in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 on the part of Defendants Anderson, McElligott and other unnamed Omaha Police officers; and (4) wrongful death under Neb.

Rev. Stat. § 30-809, against Defendants Anderson, McElligott, and other unnamed Omaha Police officers.[1]

*Use of Force*

Claims that officers used excessive force in the context of an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006). The question to be resolved is whether the amount of force used was objectively reasonable under the particular circumstances. *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). In assessing the reasonableness of an officer's conduct, one must consider the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985), focusing on such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

The uncontroverted evidence shows that the Defendant officers were called to the residence where Garcia was located, upon information that he was "threatening to do harm to himself and others." (Affidavit of Tim Lasater (Lasater Aff. #1), Filing No. 31-3, ¶ 3). Garcia found to be in possession of a sharp, pointed boning knife; was under the influence of drugs; and appeared to be irrational. (Affidavit of Chris McElligott ("McElligott Aff."), Filing No. 31-2, ¶¶ 4, 8, 9, 11, 12, 15; Affidavit of Tim Lasater, Filing No. 31-4 (Lasater Aff. #2), ¶ 2 and Ex. 1). Garcia ignored the officers' commands to drop the knife and halt, and

---

[1] The Fourth Cause of Action appears to be duplicative of the First Cause of Action, which also references damages under Nebraska's wrongful death statute. The Fourth Cause of Action alleges excessive force upon "Jonathan Conway," who is otherwise not mentioned in the Complaint.

7

instead advanced on the officers in close quarters and with the knife pointed toward them in a threatening manner.  (McElligott Aff. ¶¶ 15-18; Lasater Aff. #1 ¶¶ 7, 9-13).  When he was less than four feet from the officers, deadly force was used.  (McElligott Aff. ¶¶ 17-19).

The reasonableness of the force used is to be determined from the perspective of a reasonable officer at the scene, and not with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396.  "The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively 'reasonable' under the Fourth Amendment."  *Schulz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995).

Where an officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable for the officer to use deadly force.  See *Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007), and *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007), both citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004).

While it may appear that some alternative course of action could have been used to isolate Garcia, or that a lesser use-of-force could have disabled Garcia, it is undisputed that the officers' earlier use of a Taser and their repeated commands and display of weapons failed to subdue or deter Garcia, and that he did pose an immediate and serious threat to the officers' safety at the time the shots were fired.  When faced with an "hysterical" man in close quarters, screaming and yelling, and advancing on officers with a sharp boning knife, a reasonable officer on the scene could conclude that use of deadly force was necessary to prevent serious injury to one or more of the officers.

*Failure to Train*

Because the uncontroverted evidence shows that the Defendant officers did not violate Garcia's constitutional rights, the City of Omaha, the Omaha Police Department, and Police Chief Thomas Warren[2] may not be held liable for failure to train.  *Schulz,* 44 F.3d at 650. ("It is the law in this circuit . . . that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located," *Id.*, citing *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)).

*Unlawful Entry*

The constitutionality of an officer's entry into a residence without a warrant is also analyzed in the context of the Fourth Amendment.  *United States v. Poe*, 462 F.3d 997, 999 (8th Cir. 2006).  "[A] warrantless search of a home must be supported by consent or probable cause and exigent circumstances."  *Id.*, citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004).

The undisputed evidence in this case indicates that Officer McElligott asked Garcia if McElligott could enter the house to talk to Garcia, and Garcia consented.  (McElligott Aff. ¶ 6).  The undisputed evidence also indicates that the Defendant officers had probable cause to enter the home, because they had an objectively reasonable basis for believing that Garcia posed an immediate threat of serious harm to himself or others.  (Lasater Aff. #1 ¶ 3; McElligott Aff. ¶ 4). "[O]ne exigency obviating the requirement [for a warrant] is the need to render emergency assistance to occupants of private property who are seriously

---

[2] Although the caption names Police Chief Thomas Warren as a defendant individually and in his capacity as the Police Chief, it is unclear from the allegations in the Complaint what causes of action are asserted against him.

9

injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 126 S.Ct. 1943, 1944 (2006), citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). Whether or not Officers Anderson and Lasater knew of Garcia's consent to entry communicated to McElligott, and whether or not McElligott knew the details of the emergency dispatch message communicated to Lasater, the officers were functioning as a team and the knowledge of one is imputed to all three under the collective knowledge doctrine. *United States v. Poe*, 462 F.3d at 1001. Because a warrantless entry was justified by Garcia's consent and by circumstances that a reasonable officer would consider to be exigent, no Fourth Amendment violation occurred.

*Wrongful Death*

Although the Defendants argue for judgment on the merits with respect to the Plaintiff's state-law cause of action for wrongful death, this Court will decline to exercise supplemental jurisdiction over that claim, in light of the dismissal of all claims based on the United States Constitution and federal statutory law. See 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Because the evidence presented to the Court shows no genuine issue of material fact with respect to any issue in this case, the Defendants' Motion for Summary Judgment will be granted. All of the Plaintiff's claims based on alleged violations of the United States Constitution and federal statute will be dismissed with prejudice, and the Plaintiff's state-law claim will be dismissed without prejudice.

IT IS ORDERED:

1. The Motion for Summary Judgment submitted by Defendants Nathan Anderson; Christopher McElligott; John Doe; Thomas Warren; City of

Omaha, Nebraska, Police Department; and the City of Omaha, Nebraska (Filing No. 27), is granted;

2. The Plaintiff's claims asserted under the United States Constitution and federal law are dismissed with prejudice;

3. The Plaintiff's claims asserted under state law are dismissed without prejudice; and

4. A separate Judgment will be entered.

DATED this 16th day of August, 2007.

                                BY THE COURT:

                                s/Laurie Smith Camp
                                United States District Judge